UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CATHERINE JIRAK MONETTI,

                            Plaintiff,

        -against-

INDEPENDENT GROUP HOME LIVING
PROGRAM, INC., WALTER STOCKTON,
Individually and in his capacity as Executive
Director of INDEPENDENT GROUP HOME
LIVING PROGRAM, INC.; WILLIAM R.
HERRICK, Individually and in his capacity as
Senior Director of Quality Assurance,
INDEPENDENT GROUP HOME LIVING
PROGRAM, INC; JOYCE McLEES,
Individually, and in her capacity as Residence
Director, INDEPENDENT GROUP HOME
LIVING PROGRAM, INC.; ELISA REYNOLDS
Individually and in her capacity as Residence
Manager, INDEPENDENT GROUP HOME
LIVING PROGRAM, INC.; ANDREW CUOMO;
JUSTICE CENTERFOR THE PROTECTION
OF PEOPLE WITH SPECIAL NEEDS; DENISE
MIRANDA, EXECUTIVE DIRECTOR, JUSTICE
CENTER FOR THE PROTECTION OF PEOPLE
WITH SPECIAL NEEDS and Individually;
ANTHONY BRUNO, Chief of Investigations,
JUSTICE CENTER FOR THE PROTECTION OF
PEOPLE WITH SPECIAL NEEDS and
Individually; SAL SALERNO, Assistant Chief
of Investigations, Region Four, JUSTICE CENTER
FOR THE PROTECTION OF PEOPLE WITH
SPECIAL NEEDS, and Individually; SATERA
BROWN, Individually and in her capacity as
Investigator with JUSTICE CENTER FOR THE
PROTECTION OF PEOPLE WITH SPECIAL
NEEDS; and EDWARD TAUB, Individually
and in his capacity as Senior Investigator with
JUSTICE CENTER FOR THE PROTECTION
OF PERSONS WITH
SPECIAL NEEDS,

                          Defendants.
------------------------------------------------------------X

**REPORT & RECOMMENDATION**
18-CV-629 (ADS) (GRB)

1

-----------------------------------------------------------X

PATRICIA JIRAK and EDWARD F. JIRAK,

                      Plaintiffs,

        -against-                                18-CV-1466 (ADS) (GRB)

INDEPENDENT GROUP HOME LIVING
PROGRAM, INC., WALTER STOCKTON,
Individually and in his capacity as Executive
Director of INDEPENDENT GROUP HOME
LIVING PROGRAM, INC.; WILLIAM R.
HERRICK, Individually and in his capacity as
Senior Director of Quality Assurance,
INDEPENDENT GROUP HOME LIVING
PROGRAM, INC; JOYCE McLEES, Individually,
and in her capacity as Residence Director,
INDEPENDENT GROUP HOME LIVING
PROGRAM, INC.; ELISA REYNOLDS
Individually and in her capacity as Residence
Manager, INDEPENDENT GROUP HOME
LIVING PROGRAM, INC.; ANDREW CUOMO;
JUSTICE CENTERFOR THE PROTECTION
OF PEOPLE WITH SPECIAL NEEDS;
DENISE MIRANDA, EXECUTIVE DIRECTOR,
JUSTICE CENTER FOR THE PROTECTION
OF PEOPLE WITH SPECIAL NEEDS and
Individually; ANTHONY BRUNO, Chief of
Investigations; JUSTICE CENTER FOR THE
PROTECTION OF PEOPLE WITH SPECIAL
NEEDS and Individually; SAL SALERNO,
Assistant Chief of Investigations, Region Four,
JUSTICE CENTER FOR THE PROTECTION
OF PEOPLE WITH SPECIAL NEEDS, and
Individually; SATERA BROWN, Individually
and in her capacity as Investigator with JUSTICE
CENTER FOR THE PROTECTION OF PEOPLE
WITH SPECIAL NEEDS; and EDWARD TAUB,
Individually and in his capacity as Senior
Investigator with JUSTICE CENTER FOR THE
PROTECTION OF PERSONS WITH
SPECIAL NEEDS,

                      Defendants.
-----------------------------------------------------------X

**GARY R. BROWN, United States Magistrate Judge:**

      Presently before the undersigned, on referral from the Honorable Arthur D. Spatt, are

motions to dismiss filed by several defendants in the two above-captioned actions.  For the reasons that follow, the undersigned recommends that those motions be GRANTED in their entirety.

**PROCEDURAL HISTORY**

The action styled *Monetti v. Independent Group Home Living Program, Inc.*, 18-CV-0629 (ADS) (GRB) ("*Monetti*") was commenced by the filing of a complaint on January 30, 2018.  *Monetti,* Docket Entry No. ("DE") 1.  On May 18, 2018, the following defendants filed a motion to dismiss for lack of jurisdiction and failure to state a claim:  Governor Andrew M. Cuomo; Kerry Delaney (Acting Commissioner of New York State Office of People with Developmental Disabilities); the Justice Center for the Protection of People with Special Needs; and two Justice Center investigators—defendants Satera Brown and Edward Taub (collectively, the "State defendants").  *Monetti*, DE 12.  On May 15, 2018, the State Defendants filed an answer and crossclaim.  *Monetti*, DE 14.  On May 25, 2018, defendants Independent Group Home Living Program, Inc., Walter Stockton, William R. Herrick, Christina Smith, Joyce McLees, Independent Group Home Living Program Community Trust B, and Konrad Kuhn (collectively the "IGHL defendants") filed an answer.  *Monetti*, DE 14.  An answer was filed by defendants Central Suffolk Hospital a/k/a Peconic Bay Medical Center, along with its board of directors, and defendant Andrew Mitchell, CEO of Peconic Bay (collectively the "Peconic Bay defendants") on May 30, 2018.  *Monetti*, DE 15.  On June 8, 2018, defendant Dr. Fred Carter filed an answer, about which the Court subsequently granted, *nunc pro tunc*, a motion for enlargement of time.  *Monetti*, DE 16.  Defendants Elisa Reynolds and Nurse Elliot filed an answer on August 1, 2018.  *Monetti*, DE 20.

The State defendants moved to dismiss for failure to state a claim on May 18, 2018.  DE

3

12.  The IGHL defendants filed a motion to dismiss for failure to state a claim was filed on August 9, 2018, and a similar motion was filed by Dr. Carter on January 30, 2019.  *Monetti*, DE 21, 27.  The three motions to dismiss were referred to the undersigned for report and recommendation by Order of the Honorable Arthur D. Spatt on April 1, 2019.  *Monetti*, DE 30. On July 12, 2019, plaintiff's counsel requested permission to file opposition out of time to the State defendants' motion to dismiss, which the undersigned granted on July 17, 2019.  *See* DE 32.

The *Jirak* action, 18-cv-1466 (ADS) (GRB), was commenced by the filing of a complaint on March 8, 2018.  *Jirak*, DE 1.  On May 30, 2018, and August 1, 2018 respectively, the IGHL defendants and defendant Elisa Reynolds filed answers.  *Jirak*, DE 10, 13.  On August 9, 2018, the IGHL defendants moved to dismiss for failure to state a claim.  *Jirak*, DE 14.  Counsel for plaintiffs failed to timely answer that motion, however, the Court granted a motion to file that response out of time.  *Jirak*, DE 18, 19.  On September 14, 2018, the state defendants filed a motion to dismiss for lack of jurisdiction and failure to state a cause of action.  *Jirak*, DE 20. Counsel for plaintiffs failed to timely respond, but, again, the Court granted counsel's application to file an untimely response.  *Jirak*, DE 22.  By Orders dated April 1 and 2, 2019, the district court referred the motions to dismiss to the undersigned for Report and Recommendation.  *Jirak*, DE 23.

This opinion follows.

## FACTS

The following facts are taken from the complaints and accepted as true for the purposes of these motions.  *Sung Cho v. City of N.Y.*, 910 F.3d 639, 642, n.1 (2d Cir. 2018).  The *Monetti* action alleges as follows:

4

Plaintiff Catherine Monetti, a New Jersey resident, was the sister, "Legal Representative Responsible Person and guardian" and health care proxy for the decedent Carolyn Jirak, who suffered from mental illness. *Monetti,* DE 1 ¶¶ 1, 3, 22. The suit is brought against, *inter alia,* "IGHL, Inc. . . . an adult independent residential program certified and operating under the control, authorization and supervision of the New York State Office of People with Developmental Disabilities (OPWDD)," as well as numerous employees and officers of IGHL and OPWDD. *Id*. at ¶¶ 4–13. Additionally, claims are alleged against the "Justice Center for the Protection of People with Special Needs . . . an investigative agency established to review complaints of mistreatment or neglect of persons with special needs pursuant to and under the authority of the New York State," and individuals allegedly connected with the Justice Center, including Governor Cuomo, who is named in his individual capacity. *Id*. at ¶¶ 4, 18–21. Other defendants include medical providers that treated the decedent, including private practitioners and Peconic Bay Medical Center and individuals associated therewith. *Id*. at ¶¶4, 14–16.

According to the *Monetti* complaint, the decedent resided at IGHL in Manorville for over 18 years. *Id*. at ¶ 22. On or about January 30, 2015, the decedent fell at IGHL and fractured her left knee, about which, the complaint alleges, defendants failed to notify Monetti, OPWDD or the Justice Center. *Id*. at ¶¶ 28–29. In a presumably related development, the decedent sustained "an ankle wound" which became infected and developed into sepsis. *Id*. at ¶ 29. Examination of the decedent at an urgent care facility on January 30 resulted in a recommendation that she be treated by an orthopedic specialist as soon as possible, but that was not carried out until February 4 when she was presented to Dr. Carter. *Id*. at ¶ 34–35. According to the complaint, rather than inform Monetti about the fractured knee, defendants Reynolds, McLees and Elliot "lied" to Monetti, advising her that the decedent was being taken to defendant Dr. Carter for a "suspected

5

Baker's cyst" behind the left knee. *Id*. at ¶ 33. Asserting that Dr. Carter is a "mandated reporter," the complaint alleges that he failed to report the injury to the Justice Center and asserts that doing so would have resulted in notification to Monetti and that sepsis could have been avoided. *Id*. at ¶ 37. During a medical visit on February 11, 2015, Monetti learned of the fractured knee. *Id*. at ¶ 38.

On February 14, 2015, decedent was transported from the IGHL to Peconic Bay Medical Center; once again, it is alleged, that IGHL, the hospital and the individual defendants associated therewith failed to notify Monetti of this incident. *Id*. at ¶¶ 40–41. Monetti was purportedly "misled" by Reynolds and McLees who advised her that the decedent was receiving antibiotics for her right ankle. *Id*. at ¶ 44. In the days that followed, IGHL staff members made "medication errors," for which they were disciplined, and no notice was provided to Monetti. *Id*. at ¶ 45. As a result of these errors, decedent's condition worsened. *Id*. at ¶ 48. On February 22, 2015, decedent was again brought to Peconic Bay Medical Center, where she died on March 4, 2015. *Id*. at ¶¶ 52–53. During her hospitalization, it was observed that there was "indication that [decedent] had suffered from malnutrition and that upon admission she was dehydrated, septic and had a very low platelet count." *Id*. at ¶ 55. The complaint asserts that these were all "reportable" conditions, which remained unreported and of which Monetti was not informed. *Id*. at ¶¶ 58–59.

Monetti alleges that she reported this to the Justice Center, had specific conversations with defendants Brown and Taub about the investigation of these matters, but was never informed of the outcome. *Id*. at ¶¶ 61–65. The complaint asserts that many of the defendants had a duty to investigate, report and notify Monetti of these matters, conclusorily claims that Governor Cuomo "failed to maintain his statutory commitment to Plaintiff, as a family member

and responsible person, to make sure that her sister was safe at the State regulated group home operated by IGHL." *Id*. at ¶¶ 59–72.  Based on these allegations, the *Monetti* complaint purports to set forth causes of action sounding in negligence, failure to train, violation of Section 504 of the Rehabilitation Act, procedural and substantive due process violations, and breach of contract, and seeks $50 million in compensatory and punitive damages.

The complaint in the *Jirak* case, sets forth similar allegations on behalf of plaintiffs Patricia Jirak and Edward Jirak.  Patricia Jirak is another sister of the decedent, who also purports to be the "Legal Representative, Responsible Person and guardian" for the decedent, while Edward Jirak was decedent's brother who alleges no other legal relationship.  *Jirak*, DE 1, ¶¶ 5–6, 19.  According to the *Jirak* complaint, "IGHL, by defendant Herrick contacted Patricia Jirak, in her capacity as Carolyn's guardian by an IGHL 'incident Contact Record' dated March 8, 2015 which falsely indicated that there would be investigative measures undertaken with respect to the death of Carolyn Jirak and that Plaintiff Patricia Jirak could expect to receive a copy of the record within 10 calendar days." *Id*. at ¶ 25.  Plaintiffs further allege that certain defendants falsely advised Patricia Jirak that the decedent's death was being reported to the Justice Center and that she could seek disclosure of the investigative results upon completion of its inquiry. *Id*. at ¶ 26.  In May 2016, plaintiffs learned that the "Justice Center and its investigations unit failed to report the circumstances of Carolyn's death to a working number of the Suffolk County District Attorney's Office for a criminal investigation." *Id*. at ¶ 37.  Subsequently, plaintiffs allegedly learned that the "Suffolk County Medical Examiner's Office had determined that Carolyn's death was due to misconduct and negligence by IGHL." *Id*. at ¶ 38.

As a result of these allegations, the *Jirak* complaint purports to assert claims under

Section 504 of the Rehabilitation Act, Section 1983, negligence and misrepresentation, and breach of duty.  The complaint seeks $25 million in compensatory damages, and punitive damages.

## DISCUSSION

### I.    Standard of Review

Motion to dismiss are decided under the well-established standard of review for such matters, as discussed in *Burris v. Nassau County District Attorney*, No. 14-5540 (JFB) (GRB), 2017 WL 9485714, at *3–4 (E.D.N.Y. Jan. 12, 2017), *adopted by,* 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017), which discussion is respectfully incorporated by reference herein.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679 (citation omitted).

Allegations of fraud are subject to a heightened pleading standard under Fed. R. Civ. P. 9(b).  To meet this heightened pleading standard, the complaint "must:  (1) specify the statement that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).

I.      **The Statute of Limitations and the "Zone of Danger"**

The IGHL defendants seek dismissal of plaintiffs' Section 504 claims,[1] as well as claims

sounding in negligence and misrepresentation, as having been filed outside the statute of

limitations.  As noted above, plaintiffs' claims stem from the death of the decedent on March 5,

2015, yet the complaint in *Jirak* was not filed until March 8, 2018, slightly more than three years

later.  As defendants properly set forth, plaintiffs' claims of negligence and misrepresentation,

(and potentially involving either negligent or intentional infliction of emotional distress[2]), are

governed, respectively, by a one- or three-year statute of limitations.  *See* CPLR 215(3) (one-

year statute of limitations for intentional torts); CPLR 214 (three-year statute of limitations on

negligence actions).  As Judge Seybert has previously held on very similar facts:

> Section 215(3) of New York's C.P.L.R. imposes a one-year statute of limitations
> on claims of intentional infliction of emotional distress, and the limitations period
> begins to run on the date of injury. *See* Wilson v. Erra, 94 A.D.3d 756, 756, 942
> N.Y.S.2d 127, 129 (2d Dep't 2012). Even assuming that Mr. Prodan died on May
> 1, 2010, see supra p. 3 and note 2, the statute of limitations expired on May 1, 2011.
> This action was commenced almost eight months later on December 28, 2011.
> Accordingly, the intentional infliction of emotion distress claim is dismissed as
> time-barred.

*Romeo v. Aid to the Developmentally Disabled, Inc*., No. 11-CV-6340 (JS) (GRB), 2013 WL

1209098, at *7 (E.D.N.Y. Mar. 22, 2013).

Further, because Section 504 of the Rehabilitation Act "does not specify a time limitation

for actions brought under this section . . . the court applies the 'most appropriate or analogous

---

[1] Section 504 of the Rehabilitation Act provides "[n]o otherwise qualified individual with a
disability . . . shall, solely by reason of her or his disability, be excluded from participation in, be
denied the benefits of, or be subjected to discrimination under any program or activity received
Federal financial assistance.  29 U.S.C. § 794(a).

[2] Plaintiffs disclaim the notion that their claims arise from infliction of emotional distress, DE 18
at 7, but the three-year statute would equally apply to a simple negligence action.  To the extent
plaintiff seeks leave to replead fraud with specificity, such determination must await the filing of
a proper motion to amend (if appropriate), which must include a proposed amended complaint.

state statute of limitations.'"  *Bates v. Long Island R. Co.*, 997 F.2d 1028, 1037 (2d Cir. 1993)

(quoting *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987)).  The Second Circuit has ruled

that such actions are governed by "New York's three-year statute of limitations for personal

injury actions, N.Y. CPLR 215(5)."  *Id.*

Plaintiffs' sole response to this argument is the suggestion that the death of plaintiffs'

decedent does not represent the appropriate accrual date for the statute of limitations; rather,

counsel argues that the "gravamen of Plaintiffs' Section 504 claim and the negligence claim is

the IGHL Defendants' treatment of Plaintiffs after their sister, Carolyn's death in terms of its

discriminatory actions towards Plaintiffs and their breach of duty towards plaintiffs."  *Jirak*, DE

18 at 6.  In fact, a review of the allegations of the complaints reveal that the claims appear to be

predicated only on the rights of these plaintiffs, and not the decedent.  Among the problems with

these claims is that the only injuries identified—or that can be asserted on the facts alleged—are

emotional in nature.  Under New York law, such claims cannot be sustained unless plaintiffs

were within the "zone of danger," which the plaintiffs plainly were not.  *Romeo,* 2013 WL

1209098, at *7 (E.D.N.Y. Mar. 22, 2013) (quoting *Mortise v. United States*, 102 F.3d 693, 696

(2d Cir.1996) (Plaintiffs must assert that they "suffer[ed] an emotional injury from defendant's

breach of a duty which unreasonably endangered [their] own physical safety."))  Moreover,

plaintiffs cannot base a Section 504 claim on the treatment they purportedly suffered after the

decedent's death, as such claims are expressly limited to a plaintiff suffering from a disability

who has been denied a benefit based on that disability.  *See e.g.*, *Doe v. Pfrommer*, 148 F.3d 73,

82 (2d Cir. 1998) ("In order to establish a violation of § 504 of the Rehabilitation Act, a plaintiff

must show: (1) that he has a disability for purposes of the Rehabilitation Act; (2) that he was

"otherwise qualified" for the benefit that has been denied; (3) that he has been denied the

benefits "solely by reason" of his disability; and (4) that the benefit is part of a "program or activity receiving Federal financial assistance.")

Thus, because plaintiffs cannot sustain claims based on emotional injuries, and the only actionable Section 504, negligence and misrepresentations claims were filed outside the relevant limitations periods, the undersigned recommends that they be dismissed.

## II.   Section 1983 Claims against State Defendants

The State defendants raise so many challenges to the Section 1983 claims brought against them in these cases that counsel for those defendants include in their brief summary charts[3] that prove helpful.  First, in the *Monetti* action, counsel posits the following:

|  | Negligence is not sufficient for a § 1983 claim | No property interest | No general duty to see that the law is being followed | No showing of personal involvement | Eleventh Amendment | Not a "person" | No constitutional right to an investigation |
|---|---|---|---|---|---|---|---|
| Governor Cuomo | X | X | X | X |  |  | X |
| Acting Comr. Delaney | X | X | X | X |  |  | X |
| Justice Center |  |  |  |  | X | X |  |
| Investigator Taub | X | X |  |  |  |  | X |
| Investigator Brown | X | X |  |  |  |  | X |

*Monetti*, DE 12-1 at 21.  And as to the *Jirak* action, counsel offers the following:

---

[3] In the charts, a solid square ("■") denotes a potential official capacity claim.

| | Negligence is not sufficient for a § 1983 claim | No property interest | No general duty to see that the law is being followed | No showing of personal involvement | Eleventh Amendment | Not a "person" | No constitutional right to an investigation |
|---|---|---|---|---|---|---|---|
| Governor Cuomo | X | X | X | X | ■ | | X |
| Exec. Dir. Miranda | X | X | X | X | ■ | | X |
| Justice Center | X | X | | | X | X | |
| Ch. Of Investigations Bruno | X | X | | | ■ | | |
| Asst. Chief of Investigations Salerno | X | X | | | ■ | | |
| Investigator Taub | X | X | | | ■ | | X |
| Investigator Brown | X | X | | | ■ | | X |

*Jirak,* DE 20-1 at 27.

A. *Negligence as Basis for Section 1983 Claim*

As reflected in the chart, all of the state defendants have raised the issue of whether negligence is sufficient to support a § 1983 claim. Nearly all of the factual allegations—involving errors, misdiagnoses, failure to inform, etc.—would clearly sound in negligence. However, "[i]t is well established that mere negligence is insufficient as a matter of law to state a due process violation." *Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.,* 363 F.3d 177, 187 (2d Cir. 2004).

Plaintiffs do not directly respond to this argument, but rather invoke the specter of substantive due process. However, plaintiffs' repeated invocation of the failure of the state defendants to, in their view, properly carry out certain duties imposed by state law do not pass muster. "Clearly, a violation of state law is not cognizable under § 1983." *Pollnow v. Glennon,* 757 F.2d 496, 501 (2d Cir. 1985) (citing *Davis v. Scherer*, 468 U.S. 183 (1984)). "[S]ubstantive

12

due process does not entitle federal courts to examine every alleged violation of state law." *TZ Manor, LLC v. Daines,* 815 F. Supp. 2d 726, 743–44 (S.D.N.Y. 2011) (quoting *Kuck v. Danaher*, 600 F.3d 159, 167 (2d Cir. 2010)), *aff'd*, 503 F. App'x 82 (2d Cir. 2012).  Therefore, to the extent the § 1983 claims against the state officials are predicated upon negligence, those claims should be dismissed.

B.  *Absence of a Property Interest Undermines Plaintiff's Due Process Claims*

It is well established that, to support a procedural due process claim, a plaintiff must allege deprivation of a valid property interest.  Confronted with a claim that a municipality violated the Due Process clause by failing to respond to restraining order complaints, the Supreme Court observed:

> The procedural component of the Due Process Clause does not protect everything that might be described as a "benefit": To have a property interest in a benefit, a person clearly must have more than an abstract need or desire" and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) (citations and quotations omitted).  In determining that the duty of the police to enforce restraining orders did not give rise to property interest by those protected by such action, the Court looked to an earlier decision far more relevant here:  a case finding that the "indirect nature of a benefit was fatal to the due process claim of the nursing-home residents" arising from "the Government enforced 'minimum standards of care' for nursing-home facilities."  *Id.* at 767 (citing *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773 (1980)).  "[A]n indirect and incidental result of the Government's enforcement action ... does not amount to a deprivation of any interest in life, liberty, or property."  *Id.* at 767 (citation omitted).

The same must be said of the purported entitlements cited in the complaints here:  to the

13

extent that state law mandated investigations and notification, the benefits to these plaintiffs are

sufficiently indirect so as not to constitute a property interest.   As this Court held:

> To the extent that Plaintiffs assert that they had a constitutionally protected interest
> in certain state mandated investigations, they also fail to state a claim, because
> "[s]tatutory procedural requirements without a separately articulable substantive
> right do not create a constitutionally protected interest in liberty."

*Romeo*, 2013 WL 1209098, at *6, (quoting *Rudow v. City of N.Y.,* 822 F.2d 324, 330 (2d Cir.

1987)); *see also Holcomb v. Lykens,* 337 F.3d 217, 224 (2d Cir. 2003) ("[S]tate statutes do not

create federally protected due process entitlements to specific state-mandated procedures.");

*Concourse Rehab. & Nursing Ctr., Inc. v. DeBuono,* 179 F.3d 38, 43 (2d Cir. 1999) ("[T]he

failure of a State authority to comply with State regulations cannot alone give rise to a § 1983

cause of action").[4]

Thus, because plaintiffs fail to articulate a protected property interest, the undersigned

recommends that the § 1983 claims against the state defendants be dismissed.[5]

C.    *Additional Arguments by the State Defendants*

As noted, the State Defendants articulate several additional arguments, many of which

are meritorious.  For example, in both actions, plaintiffs include Governor Cuomo as an *in*

*personum* § 1983 defendant without setting forth any allegations that suggest personal

involvement or knowledge on his part of the matter alleged.  However, "[g]overnment officials

may not be held liable for the unconstitutional conduct of their subordinates under a theory of

*respondeat superior.*  [Rather,] a plaintiff must plead that each Government-official defendant,

---

[4] It is quite concerning that plaintiffs here raise some of the very same theories that were roundly
rejected in *Romeo*, a case handled by the same plaintiffs' counsel and brought against some of
the same defendants.
[5] Plaintiffs repeatedly argue that the complaints seek injunctive relief in addition to monetary
damages.  Review of the complaints reveal no request for injunctive relief.

through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Counsel's response to this well-established principle borders on frivolous. *Jirak*, DE 22-1 at 11–12. Ultimately, however, for the reasons noted above, plaintiffs fail to state valid § 1983 claims, and the motions by the State Defendants should be granted.

### III.    Motion to Dismiss by Dr. Carter

Dr. Carter, named only in the *Monetti* action for claims emanating from purported violations of Jonathan's Law[6] as well as a claim for negligence, seeks dismissal of the claims against him.[7] Counsel for Dr. Carter correctly points out that Jonathan's Law is part of the New York State Mental Hygiene Law, and it is well established that such provisions do not establish a private right of action. *See, e.g.*, *Lombardo v. Holanchock*, No. 07 CIV. 8674 (DLC), 2008 WL 2543573, at *10 (S.D.N.Y. June 25, 2008) ("The Mental Hygiene Law is a regulatory statute. No private cause of action is authorized for violations of the Mental Hygiene Law.") (citation omitted). Plaintiffs' arguments to the contrary, offered to this Court without any citation to authority, ring hollow. Thus, the Jonathan's Law claim should be dismissed as to Dr. Carter.

As to the negligence claim—the sole remaining claim against him—Dr. Carter seeks dismissal based upon the zone of danger analysis set forth above. The response by plaintiff's counsel, to wit: "Plaintiff witnessed the danger imposed on decedent Carolyn by the condition of

---

[6] It is not clear which cause of action—if any—seeks relief against Dr. Carter under Jonathan's Law. However, as the complaint does contain such allegations, the undersigned has reviewed them for the convenience of the Court.

[7] Plaintiffs suggest that Carter be barred from bringing this motion as he filed an answer failing to specifically raise the defense of failure to state a claim, and therefore has waived such a defense. However, Dr. Carter's answer does, in fact, raise an affirmative defense that could be reasonably construed to encompass failure to state a claim. *Monetti*, DE 16 at 14 (setting forth statute of limitations defense). Moreover, had Dr. Carter's counsel moved to amend the answer to include this specific defense, such a motion would likely be granted. Thus, efficiency and fairness both warrant consideration of the arguments made.

her knee and the onset of infection," offered without citation to authority, proves unpersuasive. *See Monetti*, DE 29 at 8.  Therefore, Dr. Carter's motion to dismiss the negligence claim for failure to state a claim has merit, and the motion should be granted.

Even assuming, however, that plaintiffs set forth a valid negligence claim, the Court should decline, in its discretion, to exercise its supplemental jurisdiction.  Under the circumstances, such declination is warranted.   As the undersigned has previously observed:

> Pursuant to 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction over" state law claims if, as here, "the district court has dismissed all claims over with it has original jurisdiction.  28 U.S.C. § 1367(c)(3); *see Delaney v. Bank of Am. Corp*., 766 F.3d 163, 170 (2d Cir. 2014).  "Dismissal of the state law claims, however, is not absolutely mandatory, and the authority of whether to retain or decline jurisdiction resides in the sound discretion of the Court."  *Cinevert v. Varsity Bus Co*., No. 12–CV–1223 (RRM)(VVP), 2014 WL 4699674, at \*3 (E.D.N.Y. Sept. 22, 2014) (internal quotation marks and citations omitted); *see Delaney,* 766 F.3d at 170.   "In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity—the 'Cohill* factors.'"   *Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir.2006) (citation omitted).   "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims.*"  Kolari v. New York–Presbyterian Hosp*., 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)); *see Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) ("[I]f a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well.").

*Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 221 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz*, 643 F. App'x 54 (2d Cir. 2016).  In this case, "[t]he Court has not invested the resources necessary to resolve th[e] non-federal claim, which are wholly distinct from [the] federal claims."  *See Jordan v. Chase Manhattan Bank,* 91 F. Supp. 3d 491, 511 (S.D.N.Y. 2015).  Thus, the *Cohill* factors weigh heavily in favor of declining supplemental jurisdiction, as considerations of economy, efficiency, fairness and comity all point toward such declination.

As such, the undersigned recommends that the Court dismiss the claims against Dr.

16

Carter.

## **CONCLUSION**

Based on the foregoing, the undersigned hereby respectfully recommends as follows:

1.  The motion of the IGHL defendants to dismiss the First, Second, Third and Fourth Causes of Action in *Monetti,* as well as the First and Fourth Causes of Action in *Jirak*, should be GRANTED;

2.  The motion by the State defendants to dismiss the Seventh Cause of Action in *Monetti*, and the Second, Third and Fifth Causes of Action in *Jirak*, should be GRANTED;

3.  Dr. Carter's motion to dismiss the Fifth Cause of Action in Monetti should be GRANTED.  Furthermore, to the extent that the complaint purports to state a claim against Dr. Carter for violations of Jonathan's Law, that claim should be DISMISSED.

4.  While the Peconic Bay defendants and defendants Reynolds and Elliot have not filed a motion, those defendants raised an affirmative defense of failure to state a claim, and some of the analysis in this Report and Recommendation may bear on that defense.  As such, it is respectfully recommended that the Court direct those defendants to file a motion, if appropriate, within 30 days of the date of the Court's review of this opinion.

## **OBJECTIONS**

A copy of this Report and Recommendation is being provided to all counsel via ECF.

Any written objections to this Report and Recommendation must be filed with the Clerk of the

Court within fourteen (14) days of service of this report.  28 U.S.C. § 636(b)(1) (2012); Fed. R.

Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed

to the district judge assigned to this action prior to the expiration of the fourteen (14) day period

for filing objections.  **Failure to file objections within fourteen (14) days will preclude**

**further review of this report and recommendation either by the District Court or Court of**

**Appeals.**  *Meija v. Roma Cleaning, Inc.,* No. 17-3446, 2018 WL 4847199, at *1 (2d Cir. Oct. 5,

2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely

object); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely

to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision."); *cf. Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* review or any other standard, when neither party objects to those findings").  This is particularly true, where, as here, a party has been "warned of the consequences of not objecting to the Magistrate's findings."  *Meija*, 2018 WL 4847199, at *1.


Dated: Central Islip, New York
       July 26, 2019

                                        /s/ Gary R. Brown
                                        GARY R. BROWN
                                        United States Magistrate Judge